**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

NIKITA GODSONOV and JOHN DOES 1-100, *on behalf of themselves and others similarly situated,*

           Plaintiffs,

      - against -

MARS, INCORPORATED,

           Defendant.

---------------------------------------------------------x

Case No.

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

      Plaintiffs NIKITA GODSONOV and JOHN DOES 1-100, individually and on behalf of all other persons similarly situated, by their undersigned attorneys, as and for their Complaint against the Defendant, allege the following based upon personal knowledge as to themselves and their own action, and, as to all other matters, respectfully allege, upon information and belief, as follows (Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery):

<u>**NATURE OF THE ACTION**</u>

    1. This is a consumer protection action arising out of deceptive and otherwise improper business practices that Defendant, MARS, INCORPORATED (hereinafter, "Mars Inc." or "Defendant"), engaged in with respect to the packaging of its M&M's® Mini products in the 1.08 oz. net weight size and 1.77 oz. net weight size (hereinafter, the "Products"), which are

packaged in tubular plastic containers and regularly sold at pharmacies, convenience stores, grocery stores and supermarkets.

2.      Defendant, with intent to induce consumers to purchase the M&M's® Mini Products, manufactures, markets and sells the Products (i) in containers made, formed or filled as to be misleading and (ii) with excessive empty space (hereinafter, "non-functional slack-fill"), in violation of the Federal Food Drug & Cosmetic Act ("FDCA") Section 403(d) (21 U.S.C. 343(d)), the Code of Federal Regulations Title 21 part 100, *et. seq.*, as well as state laws prohibiting misbranded food with requirements identical to federal law.

3.      Upon information and belief, Defendant sold and continues to sell the Products in containers made, formed or filled as to be misleading and with non-functional slack-fill during the class period.

4.      Images of the Products are provided below, with horizontal lines marking the actual fill-line. Each of the Products (i) contains the same misleading product packaging, (ii) contains non-functional slack-fill and (iii) violates 21 U.S.C. 352(i), as well as consumer fraud laws of New York, as described herein.

5.      The non-transparent containers of the Products are invariably covered with brightly colored, non-transparent wrappings so that Plaintiffs and Class members cannot see the non-functional slack-fill in the container. As shown below, the size of the containers in comparison to the volume of the Products contained therein makes it appear as Plaintiffs and Class members are buying more than what is actually being sold:









6.      By increasing the size of the Product packaging, Defendant maximizes the shelf presence of its Products over competitor products. The horizontal lines in the second photo above indicates the actual fill-line of the Products at issue.

7.      Plaintiffs and Class members viewed Defendant's misleading Product packaging, reasonably relied in substantial part on the representations and were thereby deceived in deciding to purchase the Products for a premium price.

8.      Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who from the applicable limitations period up to and including the present (the "Class Period"), purchased for consumption and not for resale of the Products.

9.      During the Class Period, Defendant manufactured, marketed and sold the Products throughout the United States. Defendant purposefully sold the Products in containers made, formed or filled as to be misleading and with non-functional slack-fill.

10.      Defendant violated New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.,* a statute enacted in New York designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

11.      Defendant has deceived Plaintiffs and other consumers nationwide by mischaracterizing the volume of their Products. Defendant has been unjustly enriched as a result of their conduct.  Through these unfair and deceptive practices, Defendant has collected millions of dollars from the sale of its Products that it would not have otherwise earned. Plaintiffs bring this action to stop Defendant's misleading practice.

12.      Defendant's misbranding is intentional. Defendant has been unjustly enriched as a result of its conduct. Through these unfair and deceptive practices, Defendant has collected millions of dollars from the sale of its Products that it would not have otherwise earned.

13.      Plaintiffs' claims are not barred by the doctrine of preemption because courts routinely recognize that state law causes of action are not preempted by the Nutritional Labeling and Education Act (codified as the FDCA, 21 U.S.C. 343 et seq.) if they "seek to impose requirements that are identical to those imposed by the FDCA." Ackerman v. Coca-Cola Co., No. 09-0395, 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010) (citing Bates v. Dow Agrosciences L.L.C., 544 U.S. 431, 432 (2005)).

14.     Plaintiffs' claims are not barred by the doctrine of primary jurisdiction. Courts routinely refuse to apply the doctrine of primary jurisdiction to consumer cases. The primary jurisdiction doctrine does not apply when "the issue at stake is legal in nature and lies within the traditional realm of judicial competence." In re Frito-Lay N. Am., Inc. All Natural Litig., No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013) (citing Goya Foods, Inc. v. Tropicana Products, Inc., 846 F.2d 848, 851 (2d Cir.1988)). The claims alleged herein are "far less about science than [they are] about whether a label is misleading … and the reasonable-consumer inquiry upon which some of the claims in this case depends is one to which courts are eminently well suited, even well versed." In re Frito-Lay N. Am., 2013 WL 4647512 at *8.

## JURISDICTION AND VENUE

15.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 1332(d)(2).

16.     The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C § 1331 because it arises under the laws of the United States.

17.     The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

18.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

19.     The Court has personal jurisdiction over Defendant because its Products are advertised, marketed, distributed and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York

State; Defendant is authorized to do business in New York State; and Defendant has sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

20.     Venue is proper in this district pursuant to 28 U.S.C § 1391(a) and (b), because a substantial part of the events giving rise to GODSONOV's claims occurred in this District, and Defendant is subject to personal jurisdiction in this District. GODSONOV purchased Defendant's Products in Kings County. Moreover, Defendant distributed, advertised and sold the Products, which are the subject of the present Complaint, in this District.

## PARTIES

*Plaintiffs*

21.     Plaintiff GODSONOV is, and at all relevant times hereto has been a citizen of the state of New York and resides in Kings County. Plaintiff GODSONOV was exposed to Defendant's Product packaging, and, in reliance on its representations, purchased the slack-filled M&M's® Mini candy tubes in the 1.77 oz. net weight for personal consumption within the State of New York. Plaintiff GODSONOV purchased the Products at a CVS store in Kings County. Plaintiff GODSONOV purchased the Product for the premium price of $1.99 (or more), and was financially injured as a result of Defendant's deceptive conduct as alleged herein. The Product purchased by Plaintiff GODSONOV is substantially similar to all the other Products, is similarly packaged in misleading containers and contains non-functional slack-fill in violation of New York law; and he has standing to represent purchasers of all Products. Further, should Plaintiff GODSONOV encounter the Products in the future, he could not rely on the truthfulness of the packaging, absent corrective changes to the packaging. However, Plaintiff GODSONOV would

still be willing to purchase the current formulation of the Products, absent the price premium, so long as Defendant engages in corrective advertising.

22.     Plaintiffs JOHN DOES 1-100 are, and at all times relevant hereto has been, citizens of the any of the fifty states and the District of Columbia. During the Class Period, Plaintiffs JOHN DOES 1-100 purchased the Products for personal consumption or household use within the United States. Plaintiffs purchased the Products at a premium price and were financially injured as a result of Defendant's deceptive conduct as alleged herein.

***Defendant***

23.     Defendant MARS, INCORPORATED is a corporation organized under the laws of Virginia with its headquarters at  6885 Elm St., Mc Lean, VA, 22101and an address for service of process at the CT Corporation System, 4701 Cox Road, Suite 301, Glen Allen, VA 23060. Defendant manufactured, packaged, distributed, advertised, marketed and sold the Products to thousands of customers nationwide.

## FACTUAL ALLEGATIONS

## Identical Federal and State Laws Prohibit Misbranded Foods with Non-Functional Slack-Fill

24.     Under the Federal Food Drug and Cosmetic Act (herein "FDCA"), Section 403(d) (codified as 21 U.S.C. § 343(d)), a food shall be deemed misbranded "[i]f its container is so made, formed, or filled as to be misleading." Consumer protection laws of the fifty states and the District of Columbia correspond to the requirements of the FDCA, 21 U.S.C. §§ 343 *et seq.*

25.     Defendant's packaging and advertising of the Products also violate various state laws against misbranding which mirror federal law. New York state law broadly prohibit the misbranding of food in language identical to that found in regulations promulgated pursuant to the FDCA, 21 U.S.C. §§ 343 *et seq.*:

10

Pursuant to N.Y. AGM. LAW § 201, "[f]ood shall be deemed to be misbranded: 1. If its labeling is false or misleading in any particular… 4. If its container is so made, formed, colored or filled as to be misleading."

26.     Under the Rules of the City of New York, foods are deemed misbranded "in accordance with the Federal Food, Drug and Cosmetic Act (21 U.S.C. §343) or the New York State Agriculture and Markets Law (§ 201) under circumstances including, but not limited to, any of the following: (1) If its labeling is false or misleading in any particular. . . (4) If its container is so made, formed, colored or filled as to be misleading. . . ." *See* 24 R.C.N.Y. Health Code § 71.05(d).

27.     Additionally, pursuant to 21 C.F.R. 100.100:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

> (1) Protection of the contents of the package;

> (2) The requirements of the machines used for enclosing the contents in such package;

> (3) Unavoidable product settling during shipping and handling;

> (4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

> (5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other non-mandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

28.     However, none of the above safe-harbor provisions applies to the Products. Defendant intentionally incorporated non-functional slack-fill in its packaging of the Products in order to mislead the consumers, including Plaintiffs and members of the Class. *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 405 (E.D.N.Y. 2010) ("Misleading consumers is not a valid reason to package a product with slack-fill. *See* 21 C.F.R. § 100.100(a)(1–6)."). Further, Defendant's conduct is not protected by safe harbor laws because "[A]n act does not need to violate a specific rule or regulation in order to be considered deceptive." *See Dep't of Legal Affairs v. Father & Son Moving & Storage, Inc.*, 643 So.2d 22, 24 (Fla. 4th DCA 1994).

**<u>Defendant's Products Contain Non-Functional Slack-Fill</u>**

29.     Defendant manufactures, packages, distributes, markets, and sells chewing gum products under the well-known household brand name M&M's®. The Products are sold at most supermarket chains, convenience stores, pharmacies and other major retail outlets throughout the United States, including but not limited to Wal-Mart, Costco, CVS, Walgreens, Target and Amazon.com.

30.     Defendant has routinely and purposefully packaged the Products in containers made, formed or filled as to be misleading and with non-functional slack-fill to mislead consumers into believing that they were receiving more Products than they actually were.

31.     Non-functional slack-fill is the difference between the actual capacity of a container and the **volume** of product contained within. Plaintiffs were (and a consumer would reasonably be) misled about the volume of the product contained within the plastic container in

comparison to the size of the Products' packaging. The size of the container in relation to the actual volume of the miniature caplet-shaped chocolate candies contained therein was intended to mislead the consumer into believing the consumer was getting more of the Product than what was actually in the container.

32.     The 1.08 oz. net weight M&M's® Product is packaged in a wrapped, non-transparent tubular plastic container with an actual capacity of approximately 140 pieces of candy. However, the 1.08 oz. net weight M&M's® Product contains merely 110 pieces of candy, or 78% of the container's actual capacity. Thus, each plastic container of the 1.08 oz. net weight M&M's® Product has a non-functional slack-fill of approximately 22% of its actual capacity.

33.     The 1.77 oz. net weight M&M's® Product is packaged in a wrapped, non-transparent tubular plastic container with an actual capacity of approximately 220 pieces of candy. However, the 1.77 oz. net weight M&M's® Product contains merely 190 pieces of candy, or 86% of the container's actual capacity. Thus, each plastic container of the 1.77 oz. net weight M&M's® Product has a non-functional slack-fill of approximately 14% of its actual capacity.

34.     In addition to containing 22% and 14% non-functional slack-fill, respectively, the non-transparent containers used in the packaging of the 1.08 oz. net weight and 1.77 oz. net weight Products are uniformly covered with non-transparent colorful plastic wrappings so that consumers can neither partially nor wholly see the actual slack-filled space. The Products were designed by Defendant to give the impression that there is more content than actually packaged.

35.     Because the plastic containers of the Products are non-transparent, consumers cannot see the non-functional slack-fill in the plastic containers until after purchase. The pictures in Paragraph 5 show that the contents of the Products do not fill up the entirety of the plastic containers. In fact, each plastic container contains significant non-functional slack-fill in

violation of federal and state laws.

36.     Plaintiffs and the members of the Class relied on the sizes of the plastic containers to believe that the entire volume of the packaging of the Products would be filled to capacity, exclusive of the container's functional elements, particularly since the slack-filled space was purposely concealed by Defendant. Plaintiffs and the members of the Class' reasonably relied on the expectation that Defendant's Products would not contain non-functional slack-fill.

37.     Although Defendant's product packaging specifies the number of gum pieces contained within, that in itself is not sufficient to ensure that consumers will not be misled by Defendant's intentional, routine, misleading product packaging that contains non-functional slack-fill. In its analysis of a similar matter, the Third Circuit held that "[t]he question was not whether the ordinary purchaser would expect to find a particular number of individual candies in the box but whether such a purchaser would expect to find more of the Delson box filled." *See United States v. 174 Cases…Delson Thin Mints*, 287 F. 2d 246, 247-48 (3rd Cir. 1961). *See also Waldman v. New Chapter*, No. 09-CV-3514 (JS), (E.D.N.Y. May 19, 2010), where the Court held that "under New York law, it is 'contrary to equity and good conscience' to enable a party to benefit from misleading misrepresentations," stating that despite the weight and number of servings of the product was clearly listed on the outer packaging, the product was nevertheless misleading and contained non-functional slack-fill. New York General Business Law § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

**Defendant's Products Are Misbranded**

38.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those

claims that might be technically true, but still misleading. If any one representation in the labeling is misleading, the entire food is misbranded. No other statement in the labeling cures a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove that anyone was actually misled. Consumer protection laws of the fifty states and the District of Columbia have substantially identical requirements as the FDCA.

39. Defendant's packaging and advertising of the Products violate various state laws against misbranding. For example, New York State law broadly prohibits the misbranding of food in language identical to that found in regulations promulgated pursuant to the FDCA § 403, 21 U.S.C. 343. Under New York Agm. Law § 201, the law specifically provides that "[f]ood shall be deemed to be misbranded … [i]f its container is so made, formed, colored or filled as to be misleading."

40. Defendant's Products are misbranded under New York consumer protection laws and food regulations because they have misled Plaintiffs and Class members about the volume of the Products in comparison to the size of the Products' packaging. The size of the containers in relation to the actual amount of the Products contained therein gives the false impression that the consumer is buying more than they are actually receiving.

41. Plaintiffs and Class members were exposed to Defendant's deceptive Product packaging and Class members continue to be exposed to these false and misleading misrepresentations.

42.     There is no practical reason for the non-functional slack-fill used to package the Products other than to mislead consumers as to the actual volume of the Products being purchased by consumers.

43.     Defendant's Product packaging as alleged herein is deceptive and misleading and was designed to increase sales of the Products. Defendant's misrepresentations are part of its systematic Product packaging practice.

**Plaintiffs Were Injured as a Result of Defendant's Misleading and Deceptive Conduct**

44.     In reliance on Defendant's deception, consumers – including Plaintiffs and members of the proposed Class – have purchased Products that are misbranded.

45.     Misbranded products cannot be legally manufactured, advertised, distributed, held or sold in the United States.

46.     At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products were packaged misleadingly as set forth herein.

47.     Plaintiffs and Class members would not have bought the Products had they known they were misbranded and illegal to sell or possess.

48.     Defendant's Product packaging was a material factor in Plaintiffs' and Class members' decisions to purchase the Products. In reliance on Defendant's Product packaging, Plaintiffs and Class members believed that they were getting more of the Products than was actually being sold. Had Plaintiffs and Class members known that exclusive of functional headspace, Defendant's Products contained significant non-functional slack-fill, they would not have bought the Products.

49.     Plaintiffs and Class members paid the full price of the Products and received less of what Defendant represented they would be getting due to the non-functional slack-fill in the

16

Products. In order for Plaintiffs and Class members to be made whole, Plaintiffs and Class members would have to receive enough of the sugar-free gum so that there is no non-functional slack-fill or have paid less for the Products. In the alternative, Plaintiffs and members of the Class are damaged by the percentage of non-functional slack-fill relative to the purchase price they paid.

50. Defendant has reaped enormous profits from its false, misleading and deceptive packaging and sale of the Products. As a result of Defendant's misrepresentations, Plaintiffs and thousands of others throughout the United States purchased the Products.

51. Plaintiffs and the Class (defined below) have been damaged by Defendant's deceptive and unfair conduct in that they purchased Products packaged misleadingly and with non-functional slack-fill and paid prices they otherwise would not have paid.

52. The types of misrepresentations made above would be considered by a reasonable consumer when deciding to purchase the Products. A reasonable consumer when deciding to purchase the Products, would consider the types of misrepresentations alleged herein. A reasonable person would (and Plaintiffs did) attach importance to whether Defendant's Products are "misbranded," *i.e.,* not legally salable, or capable of legal possession, and/or are packaged in misleading containers and with non-functional slack-fill.

53. Through this action, Plaintiffs seek injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs and all other relief available to the Class as a result of Defendant's unlawful conduct.

54. Plaintiffs and the Class (defined below) have been damaged by Defendant's deceptive and unfair conduct in that they purchased Products with false and deceptive labeling and paid premium prices they otherwise would not have paid over other comparable chocolate

candy products.  The following table indicates that the Products are sold at a premium price over other brand name chocolate candy products:

| Brand | Product | Size | Price | Source |
|---|---|---|---|---|
| Nestle | SnoCaps candy | 3.1 ounces | $1.95/box $0.62/ounce | Amazon.com |
| Reese's Pieces | Reese's Pieces | 15 ounces | $3.59/package $0.23/ounce | Amazon.com |
| Hoosier Hill Farm | Chocolate River Rock Candy Nuggets | 16 ounces | $9.99/package $0.62/ounce | Amazon.com |
| **M&M's** | **M&M's Minis** | **1.08 ounces** | **$26.72/box of 24 $1.02/ounce** | **Amazon.com** |
| **M&M's** | **M&M's Minis** | **1.77 ounces** | **$1.99/tube $1.12/ounce** | **CVS** |

## CLASS ACTION ALLEGATIONS

***The Nationwide Class***

55.     Plaintiffs brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All persons or entities in the United States who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

***The New York Class***

56.     Plaintiff GODSONOV seeks to represent a class consisting of the following subclass (the "New York Class"):

> All New York residents who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

57.     Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

58.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through the appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed Class. Other members of the Class may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

59.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct.

60.     Plaintiffs will fairly and adequately protect the interests of the members of the Class in that Plaintiffs have no interests antagonistic to those of the other members of the Class. Plaintiffs have retained experienced and competent counsel.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class to individually seek redress for the wrongful conduct alleged herein. If Class treatment of these claims were not available, Defendant would likely unfairly receive hundreds of thousands of dollars or more in improper charges.

62.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the common questions of law fact to the Class are:

i.   Whether Defendant labeled, packaged, marketed, advertised and/or sold Products to Plaintiffs and Class members, using false, misleading and/or deceptive packaging and labeling;

ii.   Whether Defendant's actions constitute violations of 21 U.S.C. § 343(d);

iii.   Whether Defendant's actions constitute violations of misbranding laws in New York;

iv.   Whether Defendant's actions constitute deceptive and unfair practices and/or violations of consumer protection laws in New York;

v.   Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of Products;

vi.   Whether Defendant's labeling, packaging, marketing, advertising and/or selling of Products constituted an unfair, unlawful or fraudulent practice;

vii.   Whether the packaging of the Products during the relevant statutory period constituted unlawful non-functional slack-fill;

viii.   Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

ix.   Whether the members of the Class have sustained damages as a result of Defendant's wrongful conduct;

x.   The appropriate measure of damages and/or other relief;

xi.   Whether Defendant has been unjustly enriched by its scheme of using false, misleading and/or deceptive labeling, packaging or misrepresentations, and;

xii.   Whether Defendant should be enjoined from continuing their unlawful practices.

63.     The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class action.

64.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

65.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

66.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

67.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

68.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiffs seek, inter alia, equitable remedies with respect to the Class as a whole.  As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

### INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

69.     Plaintiff GODSONOV realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

70.     Plaintiff GODSONOV brings this claim individually and on behalf of the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, General  Business Law ("NY GBL") § 349.

71.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

72.     Under the New York Gen. Bus. Code § 349, it is not necessary to prove justifiable reliance.  ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error.  Justifiable reliance by the plaintiff is not an element of the statutory claim."  *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

73.     Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual

damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff.

74.     A consumer may have standing to seek injunctive relief even though he/she is not likely to re-purchase a product. *See Belfiore v. Procter & Gamble Company*, 14–CV–4090, 2015 WL 1402313 (E.D.N.Y. 2015).

75.     The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Products in packaging resulting in non-functional slack-fill are unfair, deceptive and misleading and are in violation of the NY GBL § 349. Moreover, New York State law broadly prohibits the misbranding of foods in language identical to that found in regulations promulgated pursuant to the FDCA § 403, 29 U.S.C. 343(d). Under New York Agm. Law § 201, "[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or filled as to be misleading." The Rules of the City of New York also prohibit the misbranding of food. *See* 24 R.C.N.Y. Health Code § 71.05(d).

76.     The foregoing deceptive acts and practices were directed at consumers.

77.     Defendant should be enjoined from packaging its Products in misleading containers and with non-functional slack-fill as described above pursuant to NY GBL § 349, New York Agm. Law § 201, 24 R.C.N.Y. Health Code § 71.05(d) and the FDCA, 21 U.S.C. § 343(d).

78.     Plaintiff GODSONOV, on behalf of himself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL, and such other relief as this Court deems just and proper.

**COUNT II**

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
## (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

79.     Plaintiff GODSONOV realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

80.     Plaintiff GODSONOV brings this claim individually and on behalf of the other members of the Class for violations of NY GBL § 349.

81.     Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in her own name to enjoin such unlawful act or practice, an action to recover her actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff.

82.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misbranding its Products as seeming to contain more in the packaging than is actually included.

83.     The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Products in misleading containers resulting in non-functional slack-fill are unfair, deceptive and misleading and are in violation of the NY GBL § 349, New York Agm. Law § 201 and the FDCA, 21 U.S.C. § 343(d) in that said Products are misbranded.

84.     The foregoing deceptive acts and practices were directed at consumers.

85.     Plaintiff GODSONOV and the other Class members suffered a loss as a result of Defendant's deceptive and unfair trade acts.  Specifically, as a result of Defendant's deceptive and unfair acts and practices, Plaintiff GODSONOV and the other Class members suffered monetary losses associated with the purchase of Products, i.e., receiving less than the capacity of

24

the packaging due to approximately 22% and 14% non-functional slack-fill, respectively, in the 1.08 oz. net weight and 1.77 oz. net weight Products. In order for Plaintiff GODSONOV and Class members to be made whole, they need to receive either the price premium paid for the Products or a refund of the purchase price of the Products equal to the percentage of non-functional slack-fill in the Products.

## COUNT III

### NEGLIGENT MISREPRESENTATION
### (All States and the District of Columbia)

86.     Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

87.     Defendant, directly or through its agents and employees, made false representations, concealment and nondisclosures to Plaintiffs and members of the Class. Defendant, through its deceptive packaging of the Products, makes uniform representations regarding the Products.

88.     To state a claim for negligent misrepresentation, a plaintiff must allege that "(1) the parties stood in some special relationship imposing a duty of care on the defendant to render accurate information, (2) the defendant negligently provided incorrect information, and (3) the plaintiff reasonably relied upon the information." *Amos v. Biogen Idec, Inc.*, No. 13-CV-6375T, 2014 WL 2882104, at *5 (W.D.N.Y. June 25, 2014).

89.     To determine the existence of a "special relationship" in a commercial transaction, a court examines three factors: "'whether the person making the representation held or appeared to hold a unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which

the information would be put and supplied it for that purpose.'" *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 474–75 (E.D.N.Y 2013).

90.     Plaintiffs and Defendant had a special relationship. Defendant, as the manufacturers, packagers, labelers and initial sellers of the Products purchased by the Plaintiffs, had a duty to disclose the true nature of the Products and not sell the Products with non-functional slack-fill. Defendant had exclusive knowledge of material facts not known or reasonably accessible to the Plaintiffs; Defendant actively concealed material facts from the Plaintiffs and Defendant made partial representations that are misleading because some other material fact has not been disclosed. Defendant's failure to disclose the information it had a duty to disclose constitutes material misrepresentations and materially misleading omissions which misled the Plaintiffs who relied on Defendant in this regard to disclose all material facts accurately and truthfully and fully.

91.     Plaintiffs and members of the Class reasonably relied on Defendant's representation that their Product contains more product than actually packaged.

92.     In making the representations of fact to Plaintiffs and members of the Class described herein, Defendant has failed to fulfill their duties to disclose the material facts set forth above.  The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

93.     Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

26

94.     Plaintiffs and members of the Class would have acted differently had they not been misled – i.e. they would not have paid money for the Products in the first place.

95.     Defendant has a duty to correct the misinformation they disseminated through the deceptive packaging of the Products. By not informing Plaintiffs and members of the Class, Defendant breached their duty. Defendant also profited financially as a result of this breach.

96.     Plaintiffs and members of the Class relied upon these false representations and nondisclosures by Defendant when purchasing the Products, upon which reliance was justified and reasonably foreseeable.

97.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Products, and any interest that would have been accrued on all those monies, all in an amount to be determined according to proof at time of trial.

98.     Defendant acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiffs and members of the Class.

99.     Plaintiffs and members of the Class are entitled to damages, including punitive damages.

## COUNT IV

### COMMON LAW FRAUD
### (All States and the District of Columbia)

100.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

101.    Defendant intentionally made materially false and misleading representations regarding the size of the Products.

102.     Plaintiffs and members of the Class were induced by, and relied on, Defendant's false and misleading packaging, representations and omissions and did not know at the time that they were purchasing the Products that they were purchasing Products that contained unlawful non-functional slack-fill.

103.     Defendant knew or should have known of its false and misleading labeling, packaging and misrepresentations and omissions. Defendant nevertheless continued to promote and encourage customers to purchase the Products in a misleading and deceptive manner. Had Defendant adequately disclosed the true size of the Products, Plaintiffs and Class members would not have purchased the Products.

104.     Plaintiffs and members of the Class have been injured as a result of Defendant's fraudulent conduct.

105.     Defendant is liable to Plaintiffs and members of the Class for damages sustained as a result of Defendant's fraud. In order for Plaintiffs and Class members to be made whole, they need to receive either the price premium paid for the Products or a refund of the purchase price of the Products equal to the percentage of non-functional slack-fill in the Products.

### COUNT V

### UNJUST ENRICHMENT
### (All States and the District of Columbia)

106.     Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

107.     As a result of Defendant's deceptive, fraudulent and misleading labeling, packaging, advertising, marketing and sales of Products, Defendant were enriched, at the expense of and members of the Class, through the payment of the purchase price for Defendant's Products.

108.    Plaintiffs and members of the Class conferred a benefit on Defendant through purchasing the Products, and Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefits conferred on it.

109.    Defendant will be unjustly enriched if it is allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendant and for which Defendant has been unjustly enriched.

110.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that they received from Plaintiffs, and all others similarly situated, in light of the fact that the volume of the Products purchased by Plaintiffs and the Class, was not what Defendant purported it to be by its labeling and packaging. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiffs, and all others similarly situated, for selling its Products in packaging resulting in non-functional slack-fill. In order for Plaintiffs and Class members to be made whole, they need to receive either the price premium paid for the Products or a refund of the purchase price of the Products equal to the percentage of non-functional slack-fill in the Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, prays for relief and judgment against Defendant as follows:

(A)    For an Order certifying the nationwide Class and under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

(B)    For an Order declaring the Defendant's conduct violates the statutes referenced herein;

(C)    For an Order finding in favor of Plaintiffs and members of the Class;

(D)     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(E)     For prejudgment interest on all amounts awarded;

(F)     For an Order of restitution and all other forms of equitable monetary relief;

(G)     For injunctive relief to repackage the Products without non-functional slack-fill as pleaded or as the Court may deem proper;

(H)     For an Order awarding Plaintiffs and members of the Class their reasonable attorneys' fees and expenses and costs of suit; and

(I)     For such other and further relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: April 11, 2016

**Respectfully submitted,**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

 /s/ C.K. Lee
By:  C.K. Lee, Esq.